```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
OMAR ABDULAZIZ,                                             :
                                    Plaintiff,              :
                                                            :     21 Civ. 1219 (LGS)
                  -against-                                 :
                                                            :     OPINION AND ORDER
MCKINSEY & COMPANY, INC. et al.,                            :
                                    Defendants.             :
------------------------------------------------------------X
```

LORNA G. SCHOFIELD, District Judge:

Defendants McKinsey & Company, Inc., McKinsey & Company, Inc. United States and McKinsey & Company, Inc. International (collectively, "McKinsey") move to dismiss the Complaint of Plaintiff Omar Abdulaziz for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the reasons set forth below, the motion is granted.

## I.   BACKGROUND

The following facts are taken from the Complaint and are assumed to be true for purposes of this motion.  *See R.M. Bacon, LLC v. Saint-Gobain Performance Plastics Corp.*, 959 F.3d 509, 512 (2d Cir. 2020).

Abdulaziz is a political dissident from the Kingdom of Saudi Arabia ("KSA") residing in Canada.  From 2009 onward, Abdulaziz posted online political commentary critical of KSA, addressing the ruling regime's corruption, foreign policy, governance and human rights violations.  In 2013, Abdulaziz applied for asylum in Canada after KSA cancelled his salary and school scholarship for what he believed was his criticism of KSA.  Abdulaziz was a close political ally and friend of Jamaal Khashoggi.  Government agencies have concluded that in October 2018, KSA agents, acting at the direction of Saudi crown prince Mohammad Bin

Salman ("MBS"), tortured and killed Khashoggi in the Saudi consulate in Istanbul and dismembered his body.

In December 2016, McKinsey prepared a PowerPoint presentation (the "Report") that identified Plaintiff as one of the three most influential dissidents using Twitter to criticize an austerity plan forwarded by MBS. McKinsey labeled the Report "Major influencers in Saudi driving discussion regarding austerity measures." The Report noted that Abdulaziz had "182.65 K" followers and described him as a "Saudi influencer with high following, mainly uses Twitter and Snapchat." The Report also noted that "Omar [Abdulaziz] has a multitude of negative tweets on topics such as austerity and the royal decrees." One of the other two individuals identified in the Report as a major influencer on austerity measures was subsequently imprisoned. The other disappeared. A separate dissenter whose tweet critical of KSA was quoted in the Report was imprisoned in March 2017. The McKinsey client for whom the report was prepared has not been publicly identified. McKinsey has a long history of extensively advising KSA government agencies.

Approximately seventeen months after the report was prepared, in May 2018, Abdulaziz declined KSA agents' requests to come to the KSA embassy in Ottawa, Canada, after those agents requested that he cease his dissident activity. In July and August of 2018, KSA agents raided Abdulaziz's family home in Jeddah, Saudi Arabia and imprisoned his two brothers. His brothers remain imprisoned, where they are regularly tortured and have called Abdulaziz to ask him to stop his political activities. Abdulaziz's friends and family have been subjected to travel bans that prevent them from leaving KSA, and KSA sent agents to Canada with the intent of assassinating Abdulaziz and another Saudi dissident. That attempt was foiled by law enforcement.

In October 2018, the existence of the Report was made public in a New York Times article, which noted KSA activities against the three dissidents identified therein. Abdulaziz first learned of the Report from the New York Times article.

The Complaint was originally filed in the Supreme Court, County of New York, on February 2, 2021, and timely removed to federal court on the basis of diversity jurisdiction.[1] The Complaint asserts four causes of action against McKinsey for:

- (1) intentional infliction of emotional distress ("IIED") by identifying Abdulaziz in the Report as a "major influencer" and providing the report to KSA and MBS, while knowing the likely repercussions were imprisonment, torture and even murder (Count One);

- (2) negligent infliction of emotional distress ("NIED") for breach of a duty to protect the identity of individuals identified in the Report when it was foreseeable that the Report could be leaked to KSA or MBS and that the Report would be used to target dissidents (Count Two);

- (3) negligence for breach of a duty to protect the identity of individuals identified in the Report and to warn them that they had been identified, when it was foreseeable that the report could be leaked and used to target dissidents (Count Three); and

---

[1] Normally the home-state exception of 28 U.S.C. § 1441(b)(2) would have prevented removal as McKinsey is alleged to have its principal place of business in New York, and therefore resides in NY for purposes of § 1441(a) and § 1332. The home-state exception does not apply in this case because McKinsey removed before it was served. The Second Circuit has permitted that practice. *See Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699, 705 (2d Cir. 2019) ("By its text, then, Section 1441(b)(2) is inapplicable until a home-state defendant has been served in accordance with state law; until then, a state court lawsuit is removable under Section 1441(a) so long as a federal district court can [otherwise] assume jurisdiction over the action."). Abdulaziz also did not move to remand within 30 days of removal, and so waived arguments that the case was improperly removed. *See Agyin v. Razmzan*, 986 F.3d 168, 182 (2d Cir. 2021).

3

- (4) prima facie tort by intentionally and/or negligently providing the report to KSA or MBS (Count Four).

For each claim, Abdulaziz asserts that McKinsey's wrongful conduct directly injured him by forcing him into hiding, causing severe emotional distress, forcing him to withdraw from university and forego regular employment. The Complaint also asserts that McKinsey's wrongful conduct caused KSA and MBS to harm Abdulaziz by using unconscionable tactics to pressure him, including actions directed at him and arresting and torturing his friends and family. The Complaint seeks monetary damages for lost income, pain and suffering, and punitive damages.

## II.  LEGAL STANDARD

On a motion to dismiss, a court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party, *Montero v. City of Yonkers*, 890 F.3d 386, 391 (2d Cir. 2018), but gives "no effect to legal conclusions couched as factual allegations." *Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017) (quoting *Starr v. Sony BMG Music Ent.*, 592 F.3d 314, 321 (2d Cir. 2010)). To withstand a motion to dismiss, a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. It is not enough for a plaintiff to allege facts that are consistent with liability; the complaint must "nudge[]" claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI*

*Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). In ruling on a motion to dismiss, the court may consider: (1) the complaint; (2) documents attached to the complaint, quoted therein or incorporated by reference; and (3) documents upon which the plaintiff relies and which are integral to the complaint. *Halebian v. Berv*, 644 F.3d 122, 131 n.7 (2d Cir. 2011); *accord Bergesen v. Manhattanville College*, No. 20 Civ. 3689, 2021 WL 3115170, at *2 (S.D.N.Y. July 20, 2021).

### III. DISCUSSION

#### A. Statute of Limitations – Intentional Torts (Counts One and Four)

The causes of action for IIED and prima facie tort (to the extent the latter asserts an intentional tort) are time barred by the one-year statute of limitations. For both claims, the Complaint alleges that McKinsey provided the Report to KSA and/or MBS some time after its creation in December 2016, and injured Plaintiff once he became aware of the Report from the New York times article in October 2018. Plaintiff agrees that his causes of action accrued in October 2018. This action was commenced over two years later in February 2021.

#### 1. Limitation Periods Under New York Law

Under New York law,[2] the statute of limitations for IIED and other intentional torts is one year. *See Trayvilla v. Japan Airlines*, 111 N.Y.S.3d 224, 225 (2d Dep't 2019) (citing CPLR § 215(3)). Claims sounding in negligence are normally subject to a three-year statute of limitations. *See Durstenberg v. Electrolux Home Prod., Inc.*, 120 N.Y.S.3d 313, 314 (1st Dep't 2020) (citing N.Y. CPLR § 214) (negligence and NIED); *Demian v. Calmenson*, 66 N.Y.S.3d 462, 463 (1st Dep't 2017) (prima facie tort). Where claims for negligence, NIED or prima facie

---

[2] This Opinion applies New York law as the parties both assume that New York is the applicable substantive law, "and such implied consent . . . is sufficient to establish choice of law." *Johnson v. JPMorgan Chase Bank, N.A.*, 488 F. Supp. 3d 144, 159 n.24 (S.D.N.Y. 2020) (quoting *Chau v. Lewis*, 771 F.3d 118, 126 (2d Cir. 2014)).

tort are premised only on intentional conduct, a one-year limitations period applies. *See Trayvilla*, 111 N.Y.S.3d at 225 (negligence and NIED); *10 Ellicott Square Ct. Corp. v. Violet Realty, Inc.*, 916 N.Y.S.2d 705, 708 (4th Dep't 2011) (prima facie tort).

The statute of limitations begins to run when a tort cause of action accrues -- "when all of the facts necessary to the cause of action have occurred so that the party would be entitled to obtain relief." *B.F. v. Reproductive Med. Assoc. of New York, LLP*, 92 N.E.3d 766, 769-770 (N.Y. 2017). "As with other torts in which damage is an essential element, the claim 'is not enforceable until damages are sustained.'" *IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 12 N.Y.3d 132, 140 (2009) (quoting *Kronos, Inc. v. AVX Corp.*, 612 N.E.2d 289, 292 (N.Y. 1993)). The Complaint alleges that Abdulaziz was first damaged -- i.e., suffered emotional distress -- in October 2018 when he read the New York Times article that made him aware of the Report.

    **2. IIED (Count One)**

The Complaint's claim for IIED (Count One) is barred by New York's one-year statute of limitations for intentional torts, as the IIED claim accrued in October 2018 -- outside the limitations period. In response, Abdulaziz invokes the continuing tort doctrine, citing the Complaint's allegations that he and third parties continue to suffer the complained-of harm to this day.

New York's continuing tort doctrine tolls the statute of limitations based on "wrongful conduct occurring more than one year prior to commencement of the action, so long as the final actionable event occurred within one year of the suit." *Estreicher v. Oner*, 49 N.Y.S.3d 530, 532 (2d Dep't 2017) (quoting *Shannon v. MTA Metro-North R.R.*, 704 N.Y.S.2d 208, 219 (1st Dep't 2000)). The continuing tort doctrine applies only where the "final actionable event" of the allegedly harmful course of conduct falls within the statute of limitations. *Estreicher*, 49

N.Y.S.3d at 532.  New York courts treat the "final actionable event" as the last tortious act by the tortfeasor, not the last injury sustained by the victim.  *See Mintz & Gold, LLP v. Zimmerman*, 898 N.Y.S.2d 116, 117 (1st Dep't 2010) (holding that the plaintiff's claim was timely under the continuing tort doctrine because the *defendant* acted within the limitations period); *Shannon*, 704 N.Y.S.2d at 209 (same).  For the IIED claim, McKinsey's final tortious act was the alleged sharing of the Report with KSA and/or MBS, which occurred by October 2018 at the latest, as described above.  The continuing tort doctrine does not toll the limitations period for the IIED claim, which is time barred.

### 3. Prima Facie Tort (Count Four)

With respect to the prima facie tort claim, the Complaint alleges that McKinsey "intentionally and/or negligently" shared the Report.  In resolving whether a claim of prima facie tort is premised on intentional conduct giving rise to a one-year limitations period, or negligence giving rise to a three-year limitations period, New York courts ask whether the facts alleged are consistent with an intentional tort or one arising in negligence, keeping in mind that "prima facie tort is not designed to 'provide a catch-all alternative for every cause of action which cannot stand on its legs.'"  *Britt v. City of New York*, 54 N.Y.S.3d 290, 290 (1st Dep't 2017) (quoting *Kickertz v. New York Univ.*, 971 N.Y.S.2d 271, 280 (1st Dep't 2013)).  New York courts apply this test even though the first element of prima facie tort under New York law is intentional infliction of harm.  *See, e.g.*, *Yang v. Northwell Health, Inc.*, 149 N.Y.S.3d 524, 528 (2d Dep't 2021) (stating as the first element of a prima facie tort "intentional infliction of harm").

The Complaint's allegations in Count Four are consistent with intentional or negligent dissemination of the Report by McKinsey.  To the extent that Count Four relies on allegations of intentional sharing of the report, it mirrors the IIED claim of Count One, is subject to the one-

year limitations period for intentional torts under New York law, and is time-barred. *See 10 Ellicott Square Ct. Corp.*, 916 N.Y.S.2d at 708.  To the extent the prima facie tort claim rests on McKinsey's alleged negligence, the claim mirrors the NIED and negligence claims of Counts Two and Three, which are addressed below.

### B. Whether McKinsey Owed Plaintiff Any Duty -- Negligence Claims (Counts Two, Three and Four)

The negligence claims -- NIED (Count Two), negligence (Count Three) and prima facie tort based on negligence (Count Four) -- are dismissed because the Complaint fails to allege that McKinsey breached any legally cognizable duty of care. The Complaint alleges that McKinsey (1) directly harmed Abdulaziz by causing him fear and emotional distress and (2) indirectly harmed Abdulaziz by targeting him for the outrageous and unconscionable conduct of KSA and MBS.[3] But the Complaint does not allege a duty of care cognizable under New York law that McKinsey breached.

Any claim sounding in negligence is based on the breach of a legally cognizable duty of care. *See, e.g., Sacino v. Warwick Valley Cent. Sch. Dist.*, 29 N.Y.S.3d 57, 60 (2d Dep't 2016) (NIED); *Rampersaud v. Hsieh Hsu Mach. Co.*, 147 N.Y.S.3d 456, 456 (2d Dep't 2021) (common law negligence).  Whether a defendant owed a duty of care to a plaintiff is a legal issue for the court. *Oddo v. Queens Vill. Comm. for Mental Health for Jamaica Cmty. Adolescent Program, Inc.*, 71 N.E.3d 946, 948 (N.Y. 2017).  Whether a duty exists does not depend on a "simple weighing of equities" even when "symmetry and sympathy would so seem to be best served. Rather, the court must settle upon the most reasonable allocation of risks, burdens and costs

---

[3] The negligence claims also fail to allege that McKinsey's identification of Abdulaziz in the Report proximately caused his *indirect* injury by targeting him for persecution by KSA and MBS.  The Complaint alleges that he had been targeted for years and that KSA was aware of him and his activities prior to the Report.

8

among the parties and within society." *In re New York City Asbestos Litig.*, 59 N.E.3d 458, 469 (N.Y. 2016) (internal quotation marks and citations omitted) (quoting *De Angelis v. Lutheran Med. Ctr.*, 449 N.E.2d 406, 408 (N.Y. 1983)). "[T]he court cannot recognize a duty based entirely on the foreseeability of the harm at issue." *In re New York City Asbestos Litig.*, 59 N.E.3d at 469.

"Generally, there is no duty to control the conduct of third persons to prevent them from causing injury to others," *Lanfranchi v. Grille*, 98 N.Y.S.3d 470, 470 (2d Dep't 2019) (internal quotation marks omitted), "even where as a practical matter defendant can exercise such control." *Oddo*, 71 N.E.3d at 948 (quoting *Purdy v. Pub. Adm'r of Cty. of Westchester*, 526 N.E.2d 4, 7 (N.Y. 1988)). However, "[a] duty may arise . . . where there is a relationship . . . between defendant and a third-person tortfeasor that encompasses defendant's actual control of the third person's actions." *Id.* at 950 (quoting *Hamilton v. Beretta U.S.A. Corp.*, 750 N.E.2d 1055, 1061 (N.Y. 2001)). "Such relationships include master and servant, parent and child, and common carriers and their passengers." *Oddo*, 71 N.E.3d at 949. In evaluating whether a duty exists, New York courts have "historically proceeded carefully and with reluctance to expand an existing duty of care." *Davis v. S. Nassau Cmtys. Hosp.*, 46 N.E.3d 614, 619 (N.Y. 2015) (collecting cases). A critical consideration in determining whether a duty exists is "whether the defendant's relationship with either the tortfeasor or the plaintiff places the defendant in the best position to protect against the risk of harm." *Id.* (quoting *Hamilton*, 750 N.E.2d at 1061) (internal quotation marks omitted).

The Complaint alleges that "McKinsey owed a duty to act prudently and protect the identity of the individuals identified in the McKinsey Report from disclosure to KSA or MBS" and that "McKinsey owed a duty to act prudently and warn the individuals identified in the

McKinsey Report that it had identified them as major influencers driving dissent." The Complaint implies that these purported duties arise from allegations of foreseeability -- that it was foreseeable that the Report could be leaked to KSA or MBS and would be used to target dissidents. Similarly, Abdulaziz's memorandum of law states that a duty arises in substance when the risk of harm is foreseeable, quoting (at its source) an 1883 case described as the "English case that is the progenitor of the foreseeability principle." *Havas v. Victory Paper Stock Co.*, 49 N.Y.2d 381, 386 (1980) (quoting *Heaven v. Prender*, 11 QBD 503, 509, Britt, MR (1883)) (as quoted by *Stagl v. Delta Airlines, Inc.*, 52 F.3d 463, 469 (2d Cir. 1995), cited by Abdulaziz). But the New York Court of Appeals has long held that foreseeability alone does not create a duty.[4] *See Hamilton*, 750 N.E.2d at 1060 ("Foreseeability, alone, does not define duty-- it merely determines the scope of the duty once it is determined to exist."); *Eiseman v. State*, 511 N.E.2d 1128, 1134 (1987) ("Foreseeability of injury does not determine the existence of duty."); *Pulka v. Edelman*, 40 N.Y.2d 781, 785 (1976) ("Foreseeability should not be confused with duty."). Plaintiff also argues on this motion that a duty arises in part from the "connection" between McKinsey and Plaintiff -- that McKinsey conducted extensive research to identify Plaintiff and three others in the Report. But Plaintiff cites no authority that recognized a duty in similar circumstances. In short, the Complaint does not allege a legally cognizable duty that compelled McKinsey to warn Plaintiff or protect his identity.

The Complaint also does not allege that McKinsey had both the authority and ability to control KSA or MBS in their conduct toward Plaintiff. *See Oddo*, 71 N.E.3d at 950. The Complaint alleges that McKinsey (1) "has a long history of regularly and extensively advising

---

[4] In this regard, New York does not follow the Restatement (Third) of Torts, which adopts the principle that "[a]n actor ordinarily has a duty to exercise reasonable care when the actor's conduct creates a risk of physical harm" unless the court determines otherwise, and without regard to foreseeability. Restatement (Third) of Torts: Phys. & Emot. Harm §§ 6, 7(a) (2010).

KSA government agencies,"(2) employs Saudi citizens connected to the Saudi royal family, and (3) ended the employment of a dissident partner following his arrest by the Saudi regime. Even construed in the light most favorable to Abdulaziz, these allegations do not give rise to a plausible inference that McKinsey exercised sufficient authority and control over KSA to create a duty to protect Abdulaziz from KSA. *See, e.g.*, *He v. Apple, Inc.*, 139 N.Y.S.3d 409, 413 (3d Dep't 2020). To the contrary, the Complaint alleges facts suggesting that KSA exercised authority and control over McKinsey's conduct, given that McKinsey (1) was retained by KSA to provide consulting services and (2) terminated a high-level employee following his arrest for dissident activity.

In response, Abdulaziz first cites case law addressing special relationships already recognized by New York law as requiring a defendant to control the conduct of a third-party tortfeasor, such as common carriers. This argument is unpersuasive, as the cited cases address situations where the defendant controlled the third-party tortfeasor. The Complaint does not allege facts to support the conclusion that McKinsey had a duty to protect Abdulaziz from KSA. Counts Two, Three and Four (to the extent it alleges negligence) are dismissed.

The above is not to minimize the Complaint's allegations of horrific, unconscionable harm to Abdulaziz and his family and friends. Current New York law on the existence of a duty between a defendant and a third party who harmed the plaintiff looks for the defendant's control and authority over the third party, and the Complaint makes no plausible allegations that McKinsey exercised any control over KSA or MBS.

To the extent this case involves a unique circumstance of first impression -- whether a defendant providing information to a client must contemplate how the client will react to it, and assess the risk of harm to individuals identified therein -- the Court must "carefully predict" how

11

the New York Court of Appeals would resolve the issue, giving "fullest weight to the decisions of [New York's] highest court," "proper regard to the decisions of [New York's] lower courts," and "consider[ation] [of] the decisions of federal courts construing [New York] law." *Yukos Cap. S.A.R.L. v. Feldman*, 977 F.3d 216, 241 (2d Cir. 2020) (quoting *Phansalkar v. Andersen Weinroth & Co., L.P.*, 344 F.3d 184, 199 (2d Cir. 2003) (internal quotation marks omitted). Turning first to the cases most on point, although one older New York Court of Appeals decision briefly stated that a special relationship giving rise to a duty might exist where a defendant could "*attempt* to control" a third party tortfeasor, *see Purdy*, 526 N.E.2d at 7 (emphasis added), that holding has not been applied -- New York courts have instead looked for the defendant's *actual* control of the third party. *See, e.g.*, *Oddo*, 71 N.E.3d at 950. Second, recognition of a new duty under New York law requires careful "balancing of factors such as the expectations of the parties and society in general, the proliferation of claims, and public policies . . . convenience of administration, capacity of the parties to bear the loss, a policy of preventing future injuries, and the moral blame attached to the wrongdoer." *Davis*, 26 N.Y.3d at 576.

Balancing those factors in this case does not support finding McKinsey owed any duty to Abdulaziz. The consequence of finding McKinsey owed Abdulaziz a duty as to the Report would require any party conducting research, performing investigations or otherwise providing information to a client -- such as corporations, consulting firms, research organizations, libraries or any organization providing investigative services -- to (1) assess how their client might react to the information provided and (2) identify and warn any persons foreseeably negatively affected by the client's hypothetical reaction. Such a rule would encompass a huge number of parties, subjecting them to litigation on the basis of post-hoc allegations of foreseeable harm. New York courts typically resist such broad expansions of the duty of care.

Weighing all appropriate factors, the New York Court of Appeals would not find McKinsey had any duty to warn Abdulaziz or protect his identity in the Report in light of (1) that high court's reluctance to expand existing duties, (2) current case law requiring some degree of actual control by the defendant over the tortfeasor and (3) the strong public policy considerations counseling against finding such a duty.

### C. Leave to Amend

Leave to amend should be freely given "when justice so requires." Fed. R. Civ. P. 15(a). "However, where the plaintiff is unable to demonstrate that he would be able to amend his complaint in a manner which would survive dismissal, opportunity to replead is rightfully denied." *Hayden v. Cty. of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999); *accord Olson v. Major League Baseball*, 447 F. Supp. 3d 174, 177 (S.D.N.Y. 2020). Leave to amend also may be denied where the plaintiff "fails to specify either to the district court or to the court of appeals how amendment would cure the pleading deficiencies in its complaint." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014).

The Complaint is dismissed, but Abdulaziz may seek leave to replead by **October 13, 2021**. Should Abdulaziz seek leave to replead, he shall (1) file a letter motion not to exceed five pages explaining how a First Amended Complaint ("FAC") would allege facts that would give rise to a legally cognizable duty owed by McKinsey, consistent with law as stated in this Opinion, and (2) append to the letter motion a draft of the proposed FAC marked to show changes from the Complaint. Within seven days of the filing of any such letter motion, McKinsey shall file a letter response not to exceed five pages.

### IV.  CONCLUSION

For the foregoing reasons, McKinsey's motion to dismiss is **granted** without prejudice to renewal as stated in this Opinion and Order. The Clerk of Court is respectfully directed to close the motion at docket number 10.

Dated: September 22, 2021
     New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**